UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
3:12-cv-23-RJC

| | |
|---|---|
| **DONALD LEE SAPP, JR.,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| vs. ) | |
| ) | |
| ) | **ORDER** |
| ) | |
| ) | |
| **N.C. DEPARTMENT OF** ) | |
| **CORRECTIONS/DIVISION of** ) | |
| **PRISONS, D. HARRIS, Officer,** ) | |
| **GREGORY BULLOCK, M-Con Unit** ) | |
| **Manger, DONALD HARRIS, M-Con** ) | |
| **Assistant Unit Manager, SGT.** ) | |
| **BENNETT, M-Con Sergeant,** ) | |
| **RICHARD NEELY, Facility** ) | |
| **Administrator,** ) | |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, filed under 42 U.S.C. § 1983, (Doc. No. 1), and on Plaintiff's Application to Proceed Without Prepayment of Fees or Costs, (Doc. No. 1-1).

**I. BACKGROUND**

Pro se Plaintiff Donald Sapp, a state court inmate currently incarcerated at Bertie Correctional Institution, filed this action on January 17, 2012, pursuant to 42 U.S.C. § 1983. In his Complaint, Plaintiff names as Defendants the "North Carolina Department of Corrections/Division of Prisons," and the following employees of Lanesboro Correctional Institution: Officer "D. Harris," Unit Manager G. Bullock, Assistant Unit Manager Donald

1

Harris, "Sergeant Bennett," and Facility Administrator Richard Neely. Plaintiff's action arises out of an incident that occurred while he was incarcerated at Lanesboro Correctional Institution. Essentially, Plaintiff alleges that Defendant Harris used excessive force against Plaintiff in violation of Plaintiff's Eighth Amendment right not to be subjected to cruel and unusual punishment. More specifically, Plaintiff alleges the following in the pro se Complaint:

> On 12/28/2010 between 4:00 and 5:00 p.m. during evening chow, I was assaulted on my hands, arms, and face repeatedly for approx. 2 minutes, and/or until other staff came and restrained him, by staff member Officer D. Harris, Rotation 1-B. Earlier that day, staff member officer Williams was working the control booth and not following policy did not close Echo pods main door while [officer] Pratt and [officer] D. Harris were swapping inmates for recreation. When [officers] Pratt and Harris unlocked/opened Rec cage door, I walked directly out of the Echo pod main door, through the Anson Unit corridor, around the control booth and back into the Echo pod before staff even realized what happened. No staff attempted to react or stop me, even when this is a controlled movement/M-con unit. I willfully returned to my cell. I had previously from my storage locker [sic?]. [Officer] Williams said I wasn't getting nothing because of the stunt I just pulled. As [Officer] D. Harris was feeding lower Echo pod at evening chow, he came to my door and paused. I inquired about getting my puzzle books out of my property. [Officer] Harris stated, "[Sergeant] Bennett saw the stunt you pulled earlier and said I could not get nothing today. Then [Officer] Harris unlocked my wicket door but did not open it and said, "I don't even think I am going to feed your stupid ass." Without giving me a tray, [Officer] Harris attempted to lock my wicket door back but I pushed it open by force and was attempting to put my arm out trap [sic] to hold it open until I got fed or saw the [sergeant] on duty, when [Officer] D. Harris went into a maniacal rage and started punching me on my hand and arm repeatedly like he was rabid or insane. While he was screaming and punching me I reached up and grabbed the cell and wicket door keys out of the lock with my other hand and pulled them into my cell. That's when [Officer] Harris lost all control and punched me in the face through the wicket door. After [approximately] 2 [minutes] of being assaulted with closed fists, [Officer Williams] and [another officer] came and physically restrained [Officer] Harris and he resisted them also. [Sergeant] Bennett came to my door and I stated "see how unprofessional your staff acts." She said she would handle it. I had ask[ed] Asst. Unit Manager Donald Harris and other staff to let me make a statement, take picture[s] of my bruises and injuries, and to speak to unit manager Mr. Bullock and/or the officer in charge, but was constantly ignored. Asst. Unit Manager Donald Harris stated that the [officer in charge] would investigate the incident and do all that. It was never done. I was never taken to medical and no one came to see if I was ok, ask what happened or anything. I requested the security video to

2

>be reviewed of the incident and was informed Mr. Richard Neely, the facility administrator, ordered it destroyed.

(Doc. No. 1 at 3). Plaintiff seeks monetary compensation from Defendants as well as an order from the Court that Plaintiff shall not be housed in the same facility with the named Defendants, an order from the Court requiring Defendants to follow the prison's policies and procedures, and to "receive verbal or written apologies from all name[d] defendants for the assault and/or lack of attention given thereof and/or for not properly following policy and procedure." (Id.).

## II. STANDARD OF REVIEW

The Court first notes that, as to Plaintiff's application to proceed in forma pauperis, on January 18, 2012, the Court entered an Order waiving the initial filing fee and directing monthly payments to be made from Plaintiff's prison account. (Doc. No. 3). To this extent, Plaintiff's application to proceed in forma pauperis is granted.

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to

ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

### III. DISCUSSION

Plaintiff does not clearly indicate in his Complaint the specific claims that he is intending to bring against Defendants. However, it appears that he is bringing Eighth Amendment claims based on both excessive force and failure to protect, and possibly a claim for deliberate indifference to serious medical needs. First, as for Plaintiff's excessive force claim, the Eighth Amendment prohibits the infliction of "cruel and unusual punishments," U.S. CONST. amend. VIII, and protects prisoners from the "unnecessary and wanton infliction of pain," Whitley v. Albers, 475 U.S. 312, 319 (1986). To establish an Eighth Amendment claim, an inmate must satisfy both an objective component–that the harm inflicted was sufficiently serious–and a subjective component–that the prison official acted with a sufficiently culpable state of mind. Williams v. Benjamin, 77 F.3d 756, 761 (4th Cir. 1996). In adjudicating an excessive force claim, the Court must consider such factors as the need for the use of force, the relationship between that need and the amount of force used, the extent of the injury inflicted, and, ultimately, whether the force was "applied in a good faith effort to maintain or restore discipline, or maliciously and sadistically for the very purpose of causing harm." Albers, 475 U.S. at 320-21. Furthermore, the Supreme Court has recently reiterated that "[a]n inmate who is gratuitously beaten by guards does not lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." Wilkins v. Gaddy, 130 S.Ct. 1175, 1178-79 (2010). In Wilkins v. Gaddy, the Supreme Court observed:

> This is not to say that the "absence of serious injury" is irrelevant to the Eighth Amendment inquiry. "[T]he extent of injury suffered by an inmate is one factor that may suggest 'whether the use of force could plausibly have been thought

4

necessary' in a particular situation." The extent of injury may also provide some indication of the amount of force applied. As we stated in Hudson, not "every malevolent touch by a prison guard gives rise to a federal cause of action." "The Eighth Amendment's prohibition of 'cruel and unusual' punishments necessarily excludes from constitutional recognition de minimis uses of physical force, provided that the use of force is not of a sort repugnant to the conscience of mankind." An inmate who complains of a "push or shove" that causes no discernible injury almost certainly fails to state a valid excessive force claim. Injury and force, however, are only imperfectly correlated, and it is the latter that ultimately counts.

Id. at 1178-79 (citations omitted).

Next, as for Plaintiff's Eighth Amendment claim based on failure to protect, a prison official's "'deliberate indifference' to a substantial risk of serious harm to an inmate violates the Eighth Amendment." Farmer v. Brennan, 511 U.S. 825, 828 (1994) (citations omitted).[1] The United States Supreme Court and the Fourth Circuit have rejected a negligence standard in determining deliberate indifference. See Whitley v. Albers, 475 U.S. 312, 319 (1986); Moore v. Winebrenner, 927 F.2d 1312, 1315-17 (4th Cir. 1991). Thus, mere negligent behavior on the part of a prison official in failing to protect a prisoner from a risk of harm does not present a constitutional violation. See Whitley, 475 U.S. at 319 ("[C]onduct that does not purport to be punishment at all must involve more than ordinary lack of due care . . . . [O]bduracy and wantonness, not inadvertence . . . characterize the conduct prohibited by [the Eighth Amendment]."); see also Moore, 927 F.2d at 1316 (citing Fourth Circuit cases adopting the Supreme Court's reasoning in Whitley). The Supreme Court has summarized deliberate indifference as follows:

---

[1] Although Farmer dealt specifically with a prison official's failure to protect an inmate from harm by a fellow inmate, the deliberate indifference standard has also been applied in cases where an officer fails to intervene in an altercation between an inmate and another officer. See, e.g., Buckner v. Hollis, 983 F.2d 119 (8th Cir. 1993).

5

> [A] prison official cannot be found liable under the Eighth Amendment for denying an inmate humane conditions of confinement unless the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw that inference.

Farmer, 511 U.S. at 837.

This Court finds Plaintiff has stated a claim for excessive force against Defendant D. Harris sufficient to survive initial review. The remaining Defendants, however, will be dismissed, as Plaintiff has failed to state an Eighth Amendment claim against them based on their failure to protect Plaintiff from the alleged assault by Defendant D. Harris. First, Plaintiff does not allege any facts tending to show that the other Defendants knew or should have known that Defendant D. Harris was going to assault Plaintiff such that they had any affirmative duty to act to protect Plaintiff before the alleged assault occurred. Furthermore, by Plaintiff's own allegations, officers at the prison quickly intervened in the alleged assault once it had begun. Here, Plaintiff alleges that within two minutes after Defendant D. Harris allegedly started punching Plaintiff, officers came to Plaintiff's cell and pulled D. Harris away from Plaintiff. As to Defendant Unit Manager Donald Harris, the only allegations by Plaintiff concerning Donald Harris are that Harris told Plaintiff that the officer in charge would investigate the incident but that an investigation was never done. These allegations do not state an Eighth Amendment claim based on failure to protect. Furthermore, the grievances attached to Plaintiff's Complaint indicate that the prison did conduct an investigation into the alleged assault. See (Doc. No. 4 at 6). Next, as to Officer Bennett, Plaintiff alleges only that Bennett came to his cell after the incident and that she told Plaintiff she would "handle it." These allegations are not sufficient to allege a failure to protect claim against Bennett. As to Defendant Unit Manager Bullock, Plaintiff alleges only that he asked to speak to Defendant Bullock and/or the officer in charge,

6

but that Plaintiff "was constantly ignored." Again, these allegations simply do not sufficiently state a claim against Defendant Bullock for failure to protect. Finally, as to Defendant Facility Administrator Richard Neely, Plaintiff only that he was told that Neely destroyed the videotape of the alleged incident. These allegations do not state a claim for failure to protect. Furthermore, absent personal involvement, Defendant Neely and the other named Defendants who may have had a supervisory role cannot be held liable based on respondeat superior. See Monell v. Department of Soc. Servs., 436 U.S. 658, 694 (1978) (stating that under § 1983, liability is personal in nature, and the doctrine of respondeat superior does not apply).

Next, to the extent that Plaintiff is attempting to state a claim for deliberate indifference to serious medical needs, his claim fails. To state a claim under the Eighth Amendment, a plaintiff must show a "deliberate indifference to serious medical needs" of the inmate. Estelle v. Gamble, 429 U.S. 97, 104 (1976). "Deliberate indifference requires a showing that the defendants actually knew of and disregarded a substantial risk of serious injury to the detainee or that they actually knew of and ignored a detainee's serious need for medical care." Young v. City of Mt. Ranier, 238 F.3d 567, 575-76 (4th Cir. 2001) (citations omitted). Here, Plaintiff specifies no injuries except that he had bruises after the alleged assault. Bruising alone does not constitute a "serious medical need." See Reed v. Trasatti, No. 12-3920, 2013 WL 275043, at *5 (D.N.J. Jan. 24, 2013) ("Plaintiff's vague allegations of "bruising" do not pass Iqbal's sua sponte screening plausibility requirement, because he has not pled a "serious medical need.").

Furthermore, even if Plaintiff sufficiently alleged that he had a "serious medical need," he has not alleged any facts showing that Defendants were deliberately indifferent to that need. Plaintiff alleges that Defendants did not take him to medical for treatment after the incident, but he does not allege that he requested to go to medical, or that Defendants knew or should have

7

known that he had a serious medical need. Willacy v. County of Brevard, No. 04-cv-1666-Orl-18DAB, 2007 WL 1017657, at *9 (M.D. Fla. Mar. 30, 2007) (inmate who alleged that he suffered numerous lacerations, contusions, bruising and burning sensation in his eyes after being attacked by another inmate, but did not seek further medical assistance after his wounds were cleaned, failed to assert a serious medical need). In sum, Plaintiff's allegations are simply not enough to state a claim for deliberate indifference to a serious medical need against Defendants.

IV. CONCLUSION

In sum, the Complaint survives initial review under 28 U.S.C. § 1915(e) and 28 U.S.C. § 1915A as to Defendant D. Harris, the officer who allegedly used excessive force against Plaintiff, but the remaining Defendants will be dismissed.

**IT IS, THEREFORE, ORDERED** that:

1. Plaintiff's Complaint, (Doc. No. 1), survives initial review under § 1915(e) and 28 U.S.C. § 1915A as to Defendant D. Harris, but all of the remaining Defendants will be dismissed with prejudice for the reasons stated herein.

2. Plaintiff's Application to Proceed Without Prepayment of Fees or Costs, (Doc. No. 1-1), is **GRANTED**.

3. The Clerk is directed to mail a summons form to Plaintiff for Plaintiff to fill out and identify the sole, remaining Defendant D. Harris in the summons for service of process, and then return the summons to the Court. Plaintiff is required to provide the necessary information for the U.S. Marshal to effectuate service. If Defendant D. Harris does not waive service at his home addresses, the prison shall furnish his home address to the U.S. Marshal. The summons and executed summons that will be served on Plaintiff after service is effectuated shall be redacted so that Defendant's

home address is not included. Once the Court receives the summonses from Plaintiff, the Court will then direct the U.S. Marshal to effectuate service on Defendant.

Signed: June 10, 2013

Robert J. Conrad, Jr.
United States District Judge